**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| RCP BENTON LLC, RCP CABOT LLC, RHINO 750 SANFORD LLC, RCP 1950 MS LLC, RCP SHERWOOD LLC, RCP SPRINGDALE LLC, and RCPTN LLC, | § § § § § Case No. § § JURY TRIAL WAIVED § § § § § § § § |
| Plaintiffs, | |
| v | |
| SANAULLAH ABBASI and SAMIR JUMA, | |
| Defendants. | |

**COMPLAINT**

Plaintiffs RCP Benton LLC, RCP Cabot LLC, Rhino 750 Sanford LLC, RCP 1950 MS LLC, RCP Sherwood LLC, RCP Springdale LLC, and RCPTN LLC (collectively "Plaintiffs") file this Complaint against Sanaullah "Sunny" Abbasi ("Abbasi") and Samir Juma ("Juma" and with Abbasi, the "Defendants") and alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiffs bring causes of action against Defendants including fraud in the inducement and breach of contract.

2. Upon information and belief, Defendants induced Plaintiffs to execute seven Guaranties (defined herein) through materially false representations regarding desire, experience, and finances attendant to the Guaranties.

3. Further, Defendants breached the Guaranties executed between themselves and Plaintiffs by failing to pay numerous expenses, including rent. To date, Defendants have failed to make good on these Guaranties.

**THE PARTIES**

4. RCP Benton LLC is an Arkansas limited liability company with its principal place

of business located at 411 Theodore Fremd Ave, Suite 206-S, Rye, New York 10580.

5. RCP Cabot LLC is an Arkansas limited liability company with its principal place of business located at 411 Theodore Fremd Ave, Suite 206-S, Rye, New York 10580.

6. Rhino 750 Sanford LLC is a Florida limited liability company with its principal place of business located at 411 Theodore Fremd Ave, Suite 206-S, Rye, New York 10580.

7. RCP 1950 MS LLC is a Mississippi limited liability company with its principal place of business located 411 Theodore Fremd Ave, Suite 206-S, Rye, New York 10580.

8. RCP Sherwood LLC is an Arkansas limited liability company with its principal place of business located at 411 Theodore Fremd Ave, Suite 206-S, Rye, New York 10580.

9. RCP Springdale LLC is an Arkansas limited liability company with its principal place of business located at 411 Theodore Fremd Ave, Suite 206-S, Rye, New York 10580.

10. RCPTN LLC is a Tennessee limited liability company with its principal place of business located at 411 Theodore Fremd Ave, Suite 206-S, Rye, New York 10580.

11. Abbasi is an individual residing in Fort Bend County, Texas. His address is 29207 Grand Gorge Dr., Katy, TX 77494.

12. Juma is an individual residing in Tarrant County, Texas. His address is 5835 Sterling Dr., Colleyville, TX 76034.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiffs and Defendants. Plaintiffs are Florida, Arkansas, Mississippi, and Tennessee entities, with all their members residing in New York or New Jersey. Defendants are Texas residents. Further, the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

14. In addition, the MLAs (defined herein), and by extension the Guaranties, state as

follows, "For purposes of any action or proceeding arising out of this Lease, the parties hereto expressly submit to the jurisdiction of all federal and state courts located in the State of Florida." "Furthermore, Tenant waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper."

## FACTS

15. Plaintiffs are single purpose entities and a part of an internally managed net-lease real estate investment company whose purpose is the acquisition, investment, and management of single tenant real estate.

16. In April 2024, Plaintiffs' managers received a proposal from Black Wolf Food N Fuel LLC ("Black Wolf"), through Defendant Abassi, concerning seven gas stations Plaintiffs had available for lease. In this proposal, Abbasi represented he would provide information on financial backing.

17. Black Wolf is an entity that Defendants purport to be 50/50 shareholders in.

18. On or about June 18, 2024, Plaintiffs entered into seven *Master Lease Agreements* (the "MLAs") with Black Wolf, as tenant, to be effective on June 14, 2024. These MLAs concerned seven separate properties located in four states. In Arkansas, MLAs covered properties located in Benton, Cabot, Sherwood, and Springdale. A single property in Sanford, Florida was covered by an MLA. Lastly, properties in Gaultier, Mississippi and Millington, Tennessee were included as a part of the MLAs (collectively, the "Properties").

19. Concurrently, Plaintiffs entered into seven separate *Unconditional Guaranty of Lease* (collectively, the "Guaranties") with Defendants. There is a separate Guaranty supporting each MLA.

**Fraudulent Inducement**

20.     Between receiving the initial proposal in April 2024 and execution of the Guaranties in June 2024, Defendants made numerous, material representations to Plaintiffs. After the Guaranties were executed, these representations proved to be false.

21.     Plaintiffs were provided a presentation deck ("Presentation") from Black Wolf. Both Defendants Abassi and Juma are featured prominently therein.

22.     In the Presentation, Defendants represent that they intended to acquire "leasehold gas stations in Missouri, Arkansas, and Florida" in the fourth quarter of 2024.



23.     This led Plaintiffs to believe that Defendants interested in partnering with Plaintiffs, because Plaintiffs had locations in Florida and Arkansas. Further, with so many planned acquisitions in the near future, Defendants signaled they were not only interested, but also financially able to guarantee payment on the MLAs through the Guaranties.

24.     Further, this Presentation led Plaintiffs to believe that Defendants are sophisticated businessmen, capable and experienced, in operating gas stations.

25.     The Presentation begins with an overview of Defendants' company Black Wolf Investments. Therein, Defendants represent the extensive experience Black Wolf Investments

possesses in "gas station operations."

## About Black Wolf Investments

BLACK WOLF INVESTMENTS IS A DISTINGUISHED PRIVATELY-HELD REAL ESTATE DEVELOPMENT AND OPERATIONS COMPANY DEEPLY EMBEDDED IN THE UNITED STATES MARKET. WE SPECIALIZE IN OFFERING A WIDE ARRAY OF INVESTMENT AVENUES THROUGH A MULTIFACETED STRATEGY THAT ENCOMPASSES BOTH DEVELOPMENT AND OPERATIONAL APPROACHES. DRAWING UPON OUR EXTENSIVE INDUSTRY EXPERTISE AND TRACK RECORD, BLACK WOLF INVESTMENTS IDENTIFIES PROMISING REAL ESTATE OPPORTUNITIES NATIONWIDE, UTILIZING METICULOUS RESEARCH AND COMPREHENSIVE ANALYSIS. OUR PORTFOLIO COMPRISES A DIVERSE RANGE OF ASSET CLASSES, INCLUDING RESIDENTIAL, COMMERCIAL, HOSPITALITY, MULTI-FAMILY, AND MIXED-USE PROPERTIES. BY BLENDING THESE VARIED REAL ESTATE ASSETS, WE EFFECTIVELY MANAGE RISK AND OPTIMIZE OPPORTUNITIES FOR INVESTORS TO CAPITALIZE ON MARKET FLUCTUATIONS AND EMERGING TRENDS. WHAT TRULY DISTINGUISHES BLACK WOLF INVESTMENTS IS OUR UNWAVERING DEDICATION TO DELIVERING OUTSTANDING RESULTS AND FOSTERING ENDURING PARTNERSHIPS. WE ADOPT A HOLISTIC AND STRATEGIC APPROACH, TAILORING PORTFOLIOS TO ALIGN WITH THE UNIQUE GOALS OF OUR INVESTORS. THROUGH TRANSPARENT COMMUNICATIONS, REGULAR UPDATES, AND DETAILED PERFORMANCE REPORTS, WE CULTIVATE TRUST AND COLLABORATION WITH OUR INVESTOR COMMUNITY. THIS COMMITMENT TO TRANSPARENCY ENABLES INVESTORS TO MAKE WELL-INFORMED DECISION CONFIDENTLY. ==FURTHERMORE, BLACK WOLF INVESTMENTS EXCELS NOT ONLY IN TRADITIONAL REAL ESTATE SECTORS BUT ALSO IN SPECIALIZED NICHES LIKE== MEDICAL FACILITIES AND ==GAS STATION OPERATIONS.== IN HEALTHCARE, WE'RE RENOWNED FOR OUR CUTTING-EDGE FACILITIES, PRIORITIZING DESIGN, FUNCTIONALITY, AND PATIENT CARE. THROUGH STRATEGIC PARTNERSHIPS, WE ENSURE OUR OPERATIONS LEAD MEDICAL INNOVATION. ==SIMILARLY, OUR GAS STATION OPERATIONS DEMONSTRATE OUR COMMITMENT TO EXCELLENCE, NAVIGATING REGULATORY COMPLIANCE AND CONSUMER TRENDS WITH EFFICIENCY. METICULOUS SITE SELECTION AND STREAMLINED OPERATIONS DELIVER CONSISTENT INVESTORS/LANDLORD RETURNS.== BLACK WOLF INVESTMENTS STANDS AS A BEACON OF EXCELLENCE IN THE REALM OF REAL ESTATE DEVELOPMENT AND OPERATIONS. WITH OUR SUCCESSFUL VENTURES, DIVERSIFIED PORTFOLIO, COMMITMENT TO SUSTAINABILITY, AND ==TRANSPARENT COMMUNICATION PRACTICES, WE PROVIDE UNPARALLELED OPPORTUNITIES FOR INVESTORS IN THE EVER-EVOLVING LANDSCAPE OF REAL ESTATE.==

26.     Defendants made material statements such as "Black Wolf Investments excels not only in traditional real estate sectors but also in specialized niches like . . . gas station operations" and "Our gas station operations demonstrate our commitment to . . . navigating regulatory compliance" and "meticulous site selection and streamlined operations deliver consistent investors/landlord returns."

27.     These statements led Plaintiffs to believe that Defendants had experience operating gas stations, had experience with regulatory compliance associated with gas stations, and could provide Plaintiffs, as landlords, with consistent returns.

28.     Further in the Presentation, Defendant Juma touted his experience as an entrepreneur who operated gas stations. He even noted that he is aware that gas stations are highly regulated. Juma also claimed he was capable of delivering results.

5



29.     Plaintiffs relied on these representations made by Defendant Juma when Plaintiffs agreed to allow him to sign the Guaranties as a guarantor.

30.     Defendant Abbasi also appears in the Presentation. He represented that he had extensive experience in retail and business expertise.



31.     Plaintiffs relied on these representations made by Defendant Abbasi when Plaintiffs agreed to allow him to sign the Guaranties as a guarantor.

6

32. All this touted experience and industry knowledge completely misled Plaintiffs. Within less than two months of signing the MLAs and the Guaranties, Abbasi messaged Plaintiffs complaining that (1) the MLAs were too restrictive and demanded an amendment, (2) an estoppel certificate associated with fuel supply agreements was needed, and (3) back property taxes were due.

33. Defendants also complained of alleged, pre-existing contracts limiting the brands of fuel they could use at the Properties. However, Plaintiffs made no warranties or representation about the fuel contracts in the MLAs and Defendants, owners and operators of gas stations, failed to investigate or perform any due diligence.

34. Suddenly, sophisticated businessmen were complaining about MLAs they negotiated, reviewed, and signed. Plaintiffs were shocked to learn that Defendants were not nearly as business savvy as they represented.

35. About a month later, in September 2024, right before the first rent payment became due, Plaintiffs received a letter titled, *Notice of Rescission of Master Lease Agreement*, from Black Wolf's counsel. This veiled attempt to get out of the MLAs and the Guaranties demonstrates Defendants lack the business acumen they claimed to possess.

36. Rather than working through their perceived issues, these alleged businessmen, with all their years of industry knowledge, attempted to use rescission to get out of contracts they negotiated, reviewed, and signed all while representing they had deep experience in this industry.

37. This was a massive surprise from Plaintiffs' perspective because Plaintiffs had already committed that they would cooperate with Defendants in amending the MLAs to the extent necessary and reaffirmed that they would, *again*, provide an estoppel certificate for the fuel supply agreements.

38. Plaintiffs were not unsympathetic about the property tax issue, but they had relied

7

on Defendants, as a sophisticated businessmen, to review all of the publicly-available information regarding the Properties prior to Defendants signing the MLAs and the Guaranties.

39. Defendants' representations that they were sophisticated businessmen with knowledge of successfully operating businesses, specifically in the gas station industry, were all material representations Plaintiffs relied upon. If Plaintiffs had known Defendants were not as sophisticated as they presented themselves, Plaintiffs would have never entered into the MLAs *or* the Guaranties.

40. Plaintiffs experienced damages based upon their reliance on Defendants' material representations regarding their desire to do business with Plaintiffs and their business experience.

41. In addition to the Presentation, Defendants provided separate statements of financial condition.

42. These statements also induced Plaintiffs into entering into the Guaranties with Defendants.

43. Therein, Juma represented he had a net worth in excess of $25 million dollars.

44. Similarly, Abbasi provided his own statement of financial condition. Therein, he claims that he has a net worth in excess of $8 million dollars:

45. If Defendants had not made these material representations, Plaintiffs would never have entered into the Guaranties with Defendants.

46. The Guaranties state the Defendants agree that any impediment against enforcement of full liability of Black Wolf shall not impair or affect Defendants' liability and obligation.

47. The Defendants, to date, have failed to pay on the Guaranties, indicating their inability to do so. This is contrary to their representation that they had the financial ability make the agreed upon payments.

48. Had Plaintiffs known that Defendants did not have the ability to shoulder the Guaranties as their financial statements indicated, Plaintiffs would never have entered into the Guaranties with the Defendants or the MLAs for that matter.

49. As a result of Defendants' financial representations, Plaintiffs have suffered damages.

**Failure to Pay Rent**

50. The Initial Term for the MLAs is twenty-five years from the effective date.

51. As a result, the leases on the Properties expire on June 14, 2049.

52. Under the terms of the MLAs, among other things, Black Wolf agreed to make monthly rental payments for the Properties, maintain insurance on the Properties, perform mandatory testing for fuel equipment, and maintain the Properties' grounds.

53. The total amount due and owed in rent for 2024 is $282,833.82. The total rent due and owed in 2025 is $913,770.82. The MLAs include incremental increases in the rent as the term progresses.

54. The Parties agreed that rent for June, July, and August 2024 would be abated. This made the first payment due in September 2024.

55. Instead of remitting payment, Black Wolf, through counsel, sent a letter purporting to rescind the Master Lease Agreements and indicating it would not make any payments on the MLAs.

56. To date, Plaintiffs have not received a single rent payment from Black Wolf.

57. Each of the Guaranties states that the Defendants, jointly and severally:

> unconditionally guarantees performance and observance by [Black Wolf] of all obligations, duties, covenants, agreements and conditions set forth in the Lease to be performed or observed by [Black Wolf] during the term of the Lease . . . . (including specifically, and without limiting the generality of the foregoing, payment by [Black Wolf] of all rental and other amounts and

9

damages of whatsoever kind or nature which may be or become due from [Black Wolf] under the terms of, or in connection with, the Lease during the Term).

58. The Defendants also agreed in the Guaranties as follows:

*Guarantor agrees* that bankruptcy insolvency, lack of corporate capacity or *any* other disability or *impediment against enforcement of full liability of Tenant named in the Lease shall in no way impair or affect Guarantor's liability and obligation hereunder*

(emphasis added).

59. To date, Plaintiffs have not received a single payment from Defendants, as guarantors.

60. Defendants' failure to make timely rental payments is contrary to the terms of the Guaranties and a breach of the same.

61. Defendants' breach has caused Plaintiffs significant damages.

**Failure to Maintain Insurance**

62. As previously mentioned, the MLAs required Black Wolf to maintain property and liability insurance on the Properties throughout the term of the lease. In addition, the Cabot, Arkansas property required flood insurance.

63. Black Wolf failed to purchase insurance for the Properties, including flood insurance for the Cabot, Arkansas property.

64. Because of Black Wolf's failure to purchase insurance, Plaintiffs were forced to purchase it.

65. Plaintiffs submitted the invoices for the insurance to Black Wolf and Defendants.

66. To date, neither Black Wolf nor Defendants have reimbursed Plaintiffs for the insurance expenses.

67. Defendants' failure to maintain and/or reimburse Plaintiffs for the purchase of insurance is contrary to the terms of the Guaranties and a breach of the same.

10

**Failure to Maintain Compliance and Maintenance of Equipment**

68. The MLAs charged Black Wolf with the responsibility of maintaining and testing equipment located on the Properties, including the underground storage tanks. This includes, but is not limited to, tank, tightness, and line testing. Defendants were also responsible for obtaining and/or maintaining a variety of permits.

69. Black Wolf failed to comply with these obligations, in breach of the MLAs.

70. As a result, Plaintiffs were forced to incur significant expenses, including the hiring of a consulting company at $5,250 per month to ensure the Properties remain in compliance. These obligations are on-going.

71. To date, neither Black Wolf nor Defendants have reimbursed Plaintiffs for these expenses.

72. Defendants' failure to maintain and/or reimburse Plaintiffs for the Properties' maintenance and testing costs is contrary to the terms of the Guaranties and a breach of the same.

73. Plaintiffs have experienced damages as a result of Defendants.

**Failure to Maintain Grounds**

74. The MLAs charged Black Wolf with being responsible for any code violations and active nuisance abatements.

75. Plaintiffs provided at least three separate notices to Defendants that Plaintiffs received concerning the Benton and Cabot, Arkansas Properties and the Gaultier, Mississippi Property. All three locations were in violation of local ordinances for failure to maintain the overgrown grass.

76. Despite receiving notice of the violations, Black Wolf failed to take appropriate action to remedy the code violations.

77. As a result, Plaintiffs were forced to remedy the code violations.

78. To date, neither Black Wolf nor Defendants have reimbursed Plaintiffs for these expenses.

79. Defendants' failure to maintain and/or reimburse Plaintiffs for the maintenance of the Properties' grounds is contrary to the terms of the Guaranties and a breach of the same.

**Other Expenses**

80. Plaintiffs continue to incur other costs associated with maintaining the Properties. For example, Plaintiffs have been required to cover property tax on all the Properties.

81. The MLAs required that Black Wolf cover these expenses, and the Guaranties require Defendants to do so if Black Wolf refuses.

82. Defendants failed to pay these expenses or reimburse Plaintiffs for the same.

83. These failures constitute breaches of the Guaranties.

## COUNT I
## FRAUD IN THE INDUCEMENT

84. Plaintiffs reallege and incorporate by reference all the allegations set forth in foregoing paragraphs.

85. Defendants intentionally made representations of material fact to Plaintiffs, inducing them to enter into the Guaranties with the Defendants. These representations include, but are not limited to, the fact that Defendants were interested in leasing gas stations from Plaintiffs, Defendants had sufficient business experience to operate gas stations, and Defendants had sufficient financial resources to cover the Guaranties.

86. Defendants knew these representations were false.

87. Defendants made these representations to induce Plaintiffs to enter into the Guaranties with the Defendants.

88. Plaintiffs have suffered significant damages as a result of Defendants' acts.

## COUNT II
## BREACH OF CONTRACT

89. Plaintiffs reallege and incorporate by reference all the allegations set forth in foregoing paragraphs.

90. The Guaranties constitute valid and binding contracts entered into by Plaintiffs and Defendants.

91. Plaintiffs performed all of the essential things that the Guaranties required Plaintiffs to do.

92. Pursuant to the Guaranties, Defendants are obligated to pay monthly rent, and meet other financial obligations, when Black Wolf fails to do so.

93. Defendants failed to meet their obligations to Plaintiffs when they failed to timely remit payment for rent or meet their other financial obligations under the MLAs and Guaranties.

94. This failure constitutes a breach of the Guaranties.

95. Plaintiffs seek damages representing the unpaid amounts due and owed under the terms of Guaranties, along with accrued interest.

## CONDITIONS PRECEDENT

96. Plaintiffs have satisfied all conditions precedent for bringing this action.

## JURY DEMAND WAIVED

97. Pursuant to the MLA, and by extension the Guaranties, both Plaintiffs and Defendants waive any right to a trial by jury.

## ATTORNEY FEES

98. Plaintiffs have found it necessary to engage the law firm of Cole Schotz P.C. to prosecute this action and to protect their rights. Pursuant to the terms of the MLA, and by extension the Guaranties, Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees and costs incurred in the prosecution of this action.

**PRAYER FOR RELIEF**

For these reasons, Plaintiffs pray the Court issues citation for Defendants to appear and answer, and that Plaintiffs be awarded a judgment against Defendants for the following:

a. damages;
b. pre- and post-judgment interest;
c. all allowable and recoverable court costs;
d. all reasonable and necessary attorneys' fees; and
e. any and all other relief, in equity and law, to which Plaintiffs are entitled.

DATED:  February 14, 2025

Respectfully submitted,

By:*/s/ Scott J. Topolski*
Scott J. Topolski
Florida Bar No. 0006394
**COLE SCHOTZ P.C.**
2255 Glades Road, Suite 300E
Boca Raton, Florida 33431
Telephone: 561 609-3856
Facsimile: 561 423-0392
stopolski@coleschotz.com

-and-

Ian Ross Phillips
*Pro Hac Vice Admission Pending*
**COLE SCHOTZ P.C.**
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: 469 557-9392
Facsimile: 469 553-1541
iphillips@coleschotz.com

**COUNSEL FOR RCP BENTON LLC, RCP CABOT LLC, RHINO 750 SANFORD LLC, RCP 1950 MS LLC, RCP SHERWOOD LLC, RCP SPRINGDALE LLC, and RCPTN LLC**